**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| TIMOTHY J. CHRISTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 02:03cv1866 |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

August 11, 2005

## I.    Introduction

Plaintiff, Timothy J. Christy, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied his application for Supplemental Security Income ("SSI") under title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f.

## II.    Background

Plaintiff was born on March 8, 1979, and was 23 years old at the time of the ALJ decision.  He has a high school degree and briefly attended college.  He has no relevant work experience and has not engaged in substantial gainful work activity since his alleged onset of disability in 1994.

Plaintiff alleges disability as of August 17, 1994, due to depression.  The medical evidence of record indicates that Plaintiff has been diagnosed with major depressive disorder and Tourette's Disorder.  (R. 301).

### B.    Procedural History

Plaintiff initially filed an application for SSI on August 20, 1999, in which he claimed total disability since August 17, 1994.  An administrative hearing was held on September 26, 2000 before Administrative Law Judge James J. Pileggi ("ALJ").  Plaintiff was represented by counsel and testified at the hearing.

On December 12, 2000, the ALJ rendered an unfavorable decision to Plaintiff in which he found that while Plaintiff had severe impairments that had more than a minimal effect on his ability to meet some of the basic demands of work, there was no evidence of an impairment or combination of impairments which met or equaled the Act's standard of disability.  The ALJ determined that the

> claimant's mental impairments have resulted in only a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and that there is no evidence of any episodes of decompensation of extended duration, functional limitations which are not sufficiently severe to satisfy the "B" criteria requirements of any condition listed in Section 12.00 et seq.

(R. 69).

On January 10, 2001, Plaintiff timely requested a review of the decision of the ALJ, and on January 15, 2002, the Appeals Council vacated the hearing decision and remanded the case with directions to obtain evidence from a vocational expert to clarify the effect, if any, of the Plaintiff's limitations upon his ability to work.  On July 31, 2001, Plaintiff filed a second application for SSI.

A second administrative hearing was held on September 25, 2002, again before Administrative Law Judge James J. Pileggi.  Plaintiff was represented by counsel and testified at

the hearing.  Karen Krull, M.Ed., an impartial vocational expert, and Crystal Norcross, plaintiff's mother, also testified at the hearing.

On November 19, 2002, the ALJ again rendered an unfavorable decision to Plaintiff and found that while Plaintiff has impairments which are "severe in that they have more than a minimal effect on his ability to meet some of the basic demands of work," there was "not evidence of an impairment or combination of impairments meeting or equaling the requirements of conditions listed in Appendix 1, Subpart P, Regulations No. 4, including Section 12.04, dealing with affective disorders." ( R. 19).

 The decision of the ALJ became the final decision of the Commissioner on October 16, 2003, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

On December 8, 2003, Plaintiff filed his Complaint in this Court in which he seeks judicial review of the decision of the ALJ.  The parties have filed cross-motions for summary judgment.  Plaintiff argues that the decision of the ALJ is not supported by the factual and medical evidence of record.   The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence.  The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.


**III.    Legal Analysis**

A.    <u>Standard of Review</u>

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. § 1382(c).  If the Commissioner's finding is supported by substantial evidence, it is

conclusive and must be affirmed by the Court.  42 U.S.C. § 405(g);  *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).   The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  It consists of more than a scintilla of evidence, but less than a preponderance.  *Stunkard v. Secretary of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).

When resolving the issue of whether an adult plaintiff is or is not disabled, the Commissioner utilizes a five-step sequential evaluation.  20 C.F.R. §§ 404.1520 and 416.920 (1995).  This process requires the Commissioner to consider, in sequence, whether a plaintiff (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work.  *See* 42 U.S.C . § 404.1520; *Burnett v. Commissioner of Social Security*, 220 F.3d 112,  118-19 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186, F.3d 422, 428 (3d Cir. 1999)).

To qualify for disability benefits under the Act, a plaintiff must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period."  *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982).

This may be done in two ways:

> (1)  by introducing medical evidence that the plaintiff is disabled *per se* because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4,

Subpt. P, Appendix 1.  *See Heckler v. Campbell*, 461 U.S. 458
(1983);  *Stunkard*, 841 F.2d at 59;  *Kangas*, 823 F.2d at 777;  or,

(2)  in the event that plaintiff suffers from a less severe impairment, by
demonstrating that he or she is nevertheless unable to engage in "any other
kind of substantial gainful work which exists in the national economy . . .
."  *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

Where a plaintiff has multiple impairments which may not individually reach the level of

severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner

nevertheless must consider all of the impairments in combination to determine

whether, collectively, they meet or equal the severity of a Listed Impairment.  *Bailey v. Sullivan*,

885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the Secretary

shall consider the combined effect of all of the individual's impairments without regard to

whether any such impairment, if considered separately, would be of such severity.")

Alternatively, in order to prove disability under the second method, a plaintiff must first

demonstrate the existence of a medically determinable disability that precludes plaintiff from

returning to his or her former job.  *Stunkard*, 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it

is shown that plaintiff is unable to resume his or her previous employment, the burden shifts to

the Commissioner to prove that, given plaintiff's mental or physical limitations, age, education

and work experience, he or she is able to perform substantial gainful activity in jobs available in

the national economy.  *Stunkard*, 842 F.2d at 59;  *Kangas*, 823 F.2d at 777;  *Doak v. Heckler*,

790 F.2d 26, 28 (3d Cir. 1986);  *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the

Act at the third step of the sequential evaluation process.  In making this determination, the ALJ

concluded that Plaintiff had the residual functional capacity to perform a significant range of work at all exertional levels.  (ALJ Decision, Finding No. 11.)

**B.    Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987).  The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g);  *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

      1.    *The ALJ properly determined that Plaintiff's impairment did not meet or equal a listing*

Plaintiff contends that the ALJ's decision that his impairment did not meet or equal a listing in Appendix 1, Subpart P, Regulations No. 4, including Sections 12.04, is not supported by the substantial evidence of record.

Under §12.04, an individual has a listed impairment and is considered disabled at Step 3 of the sequential evaluation if the individual has a "[m]edically documented persistence" of depressive symptoms, manic syndrome, or bipolar syndrome that meets the criteria in paragraphs A and B or paragraph C of §12.04.  20 C.F.R. pt. 404, subpt. P, app. I, §12.04 [A].

6

Section 12.04 [A] provides that an individual first must have a medically documented persistence of a psychological disorder.[1]   Under  §12.04 [B], an individual has a severe listed impairment if he or she exhibits two of the following limitations: "1. Marked restriction of activities of daily living;[2] or 2.  Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each or extended duration."   In determining the level at which the claimant performs daily activities, the ALJ must consider whether the individual can perform the activities "without direct supervision, or in a suitable manner, or on a consistent, useful, routine basis, or without undue interruptions or distractions."  20 C.F.R. pt. 404, subpt. P, app.1, §12.00 C1.

Under §12.04 [C], an individual has a severe impairment if he or she has a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities . . . ."

The ALJ found that:

> the evidence indicates that Mr. Christy's impairments have resulted in marked difficulties in maintaining social functioning, but no more than a mild restriction of activities of daily living, and moderate difficulties in maintaining concentration, persistence or pace.  Moreover, there is not evidence of decompensation of extended duration, or a severe mental

---

[1]  The Court notes that the ALJ did not address § 12.04[A] in his Decision.

[2]  "Activities of daily living" is defined to include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. pt. 404, subpt. P, app. 1, §12.00 C1.   Impairments in daily living activities are determined to be marked "by the nature and overall degree of interference with function."  20 C.F.R. pt. 404, subpt. P, app.1, §12.00 C1.

> impairment lasting two or more years with signs and symptoms which
> have continued despite medication or psychological support so as to
> satisfy the 'B' or 'C' criteria of any listed impairment.

(R. 19).

The evidence of record reveals that Plaintiff is able to care appropriately for his personal hygiene and grooming, is capable of using public transportation without assistance, washes "dishes- every four days," does his own laundry, sometimes takes out the garbage, and will mow the lawn when needed.  (R. 49, 114, 127, 128, 129, 176, 178).  Moreover, Plaintiff uses the telephone to talk to a friend and "always goes grocery shopping with his mother."  (R. 49, 350).

The Court finds that while the evidence of record demonstrates that Plaintiff may be somewhat limited in his daily living activities, it also demonstrates that Plaintiff can perform daily activities without undue interruption and without direct supervision.  Therefore, there is substantial evidence of record to support the ALJ's finding that the Plaintiff does not have a marked restriction in his daily activities.

The Plaintiff next contends that "he does have marked difficulties in maintaining concentration, persistence or pace."  (Pl.'s Br. at 13).  The ALJ determined that Plaintiff had only "moderate difficulties in maintaining concentration, persistence, or pace."  (R. 19). "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. pt. 404, subpt. P, app. 1, §12.00 C3.   Limitations in concentration, persistence or pace are "best observed in work settings," but may also be

reflected through limitations in other settings and assessed through clinical examinations of psychological testing.  *Id.*  A marked limitation is not defined by "a specific number of tasks that you are able to complete, but by the nature and overall degree of interference with function."  *Id.*

According to psychiatrist Phillip G. Maiden, M.D., Plaintiff "is fully alert and oriented with intact memory and attention."  (R. 255).  Additionally, Dr. Maiden noted that Plaintiff's thoughts are "clear, coherent, and goal-directed," and he is not "particularly distractible."  *Id.* Moreover, clinical psychologist Mark A. Goral, Ph.D., opined that the Plaintiff had "Good" abilities to follow work rules and to "[m]aintain attention/concentration."  (R. 352).  Although Dr. Goral opined that the Plaintiff had poor or no ability to deal with work stresses, the medical source statement prepared by Dr. Goral noted that Plaintiff had a "Good" ability to "understand, remember, and carry out simple job instructions."  (R. 352).

The Court finds that there is substantial evidence of record to support the ALJ's finding that Plaintiff has "a mild restriction in daily living, and moderate difficulties in maintaining concentration, persistence or pace," but that such limitations do not satisfy the "B" or "C" criteria of §12.04. (R. 19).

2.      *The ALJ gave proper consideration to Plaintiff's testimony and subjective complaints*

Plaintiff next argues that the ALJ failed to give proper consideration to his subjective complaints with regard to his symptoms and functional limitations.  In assessing a plaintiff's residual functional capacity, consideration must be given to subjective allegations.  20 C.F.R.

9

404.1529; 20 C.F.R. 416.929.  Plaintiff testified that he is unable to concentrate or make decisions, is easily distracted, and has not received relief from his depression despite treatment. (R. 179, 181, 348, 350).  The ALJ found that the limitations which Plaintiff alleges were not supported by the medical evidence and not credible.

An ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when such testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999) (*relying on Dobrowolsky).*  When a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the symptom, and the extent to which it affects the individual's ability to work.  This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of symptom or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c) (2002); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

Credibility determinations by an ALJ need only be supported by substantial evidence on the record as a whole.  *Miller v. Commissioner of Soc. Sec.*, 172 F.3d 303, 304 n.1 (3d Cir. 1999).  The United States Court of Appeals for the Third Circuit has stated:

> "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work."

*Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

The ALJ considered the medical evidence of record and determined that Plaintiff's allegations were not credible.  Psychologists Martin Meyer, Ph.D., and Julie Uran, Ph.D., reported that Plaintiff had a "Full Scale IQ of 76."  Although the Plaintiff had learning difficulties in high school, he was accepted into Penn State University as a provisional student and the psychological report prepared by Drs. Meyer and Uran reflects that "the academic and learning abilities of this client are average and above average."  (R. 140).

In 1999, psychologist Deborah Gregg, M.A., noted that Plaintiff shows "poor judgment and some rather unrealistic expectations of his ability;" however, she also found that Plaintiff "seems to be improving on a social level in college."  (R. 283).  Psychologist Gregg also found Plaintiff to have a GAF of 65.

Dr. Maiden reported in 2000 that plaintiff's "[s]ensorium is clear with intact memory, attention, orientation and concentration.  He appears to be of average intelligence.  Thoughts are clear, coherent and goal directed, without any hallucinatory or delusion content."  (R. 300).

In 2001, psychologist Joel Robinson, M.A., reported that Plaintiff "chooses not to work which can limit his social contacts."  (R. 314).

In 2001, Edward Jonas, Ph.D., a state agency psychological consultant, performed a functional capacity assessment and noted that plaintiff was "Not Significantly Limited" in his ability to make simple work related decisions, to understand and remember short and simple instructions. (R. 365).  Dr. Jonas noted that Plaintiff had the ability to meet the increased mental demands of a wide range of work.  Additionally,  Dr. Jonas noted that Plaintiff had no restriction in his daily living activities.  (R. 365, 369).

The evidence of record also indicates that the Plaintiff can perform daily activities without undue interruption and without direct supervision.  Specifically, Plaintiff takes out the garbage, mows the grass, does his own laundry, washes dishes, can use public transportation without assistance, and performs acceptably in the area of personal grooming and hygiene.  (R. 49, 114, 127, 128, 129, 176, 178, 350).

Plaintiff's own testimony demonstrates that his prescribed medications for depression were working and the only adverse side effect he suffered  was "dry mouth."  (R. 47,5 1).

The Court, therefore, concludes that since matters of credibility are within the province of the factfinder, the ALJ could properly determine that Plaintiff's statements and testimony were not entirely credible, and that substantial evidence supported his finding that Plaintiff is not disabled within the meaning of the Act.


3.      _The ALJ did not err when he rejected the opinion of Mark A. Goral, Ph.D._

Plaintiff argues that the ALJ erred when he rejected the opinion of consultative clinical psychologist, Mark A. Goral, Ph.D., that Plaintiff's depression "would greatly interfere with his ability to perform adequately on most jobs."  (R. 353.)

The determination of disability, which is a legal determination, is ultimately for the Commissioner and not a medical source.  20 C.F.R. §§ 404.1527(3), 416.927(e).  An ALJ may reject the opinion of a treating physician and/or consultative physician if the ALJ adequately explains the reasons for doing so on the record.  _Mason v. Shalala,_ 994 F.2d 1058, 1067 (3d Cir. 1993).

12

The record reveals that Dr. Goral evaluated Plaintiff on November 11, 2001.  He noted that Plaintiff "was neatly groomed and appropriately dressed," "spoke with no diction problems,""used correct syntax," and "was cordial and mannerly."  (R. 348).  Additionally, Dr. Goral noted that Plaintiff was "oriented by person, place, time, and situation."  *Id*.  Dr. Goral indicated that Plaintiff had good or fair abilities to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, function independently, maintain attention/concentration, understand, remember, and carryout simple job instructions, maintain personal appearance, and relate predictably in social situations.  (R. 352).  However, Dr. Goral did note the following limitations:  that plaintiff had poor or non-existent abilities to deal with work stresses, behave in an emotionally stable manner, and demonstrate reliability.  The ALJ found, however, that "these limitations appear to have been based primarily on the doctor's acceptance of Plaintiff's self-reported history and subjective complaints, since the doctor's own findings were generally positive."  (R. 352; R. 21).

In his clinical evaluation, Dr. Goral noted that Plaintiff claimed that he has received "no relief from his depression."  (R. 348).  However, the ALJ found that the medical evidence of record established that Plaintiff's depression responded positively to his treatment regimen.  For example, Dr. Maiden noted that Plaintiff "continues to do quite well with good control of his tics, anxiety, and depression."  (R. 240).  Dr. Maiden also reported that Plaintiff's "sensorium is clear and there is no thought disorder."  (R. 237).  Psychologist Deborah Gregg, M.A., reported that Plaintiff "feels that his medication is working well for him."  (R. 280).  Moreover, when asked by the ALJ as to whether his depression is being adequately taken care of, Plaintiff responded, "[y]es, your Honor."  (R. 48).

Dr. Goral also noted that Plaintiff "tends to cycle rapidly per his own statements." (R. 353). The ALJ, however, found that no other examining physician /psychologist had ever noted that Plaintiff "tends to cycle rapidly" and, therefore, the ALJ gave this comment little weight.

As he explained, the ALJ found that the limitations used to support Dr. Goral's opinion were based primarily on the "Plaintiff's self-reported history and subjective complaints," and were unsupported by the medical evidence of record. (R. 20). The ALJ reported that "Dr. Goral's report also shows that Mr. Christy has not suffered functional loss of his impairments characteristic of an individual who is totally disabled." (R. 21). Dr. Goral noted that plaintiff "got along with others 'fairly,'" "could communicate clearly," and "revealed excellent social judgment." (R. 21, 348-50).

The Court finds that the ALJ observed the proper legal standards in evaluating the opinion of the consultative psychologist Dr. Goral. Accordingly, the Court concludes that there is substantial evidence in the record to support the determination of the ALJ to reject Dr. Goral's opinion.

_____4.     *The ALJ's hypothetical accurately portrayed Plaintiff's impairments.*

In order to determine whether a plaintiff is capable of performing substantial gainful activity that exists in significant numbers in the national economy, the ALJ may rely upon the testimony of a vocational expert ("VE"). Testimony of a VE constitutes substantial evidence for the purpose of judicial review when a hypothetical question includes all of a plaintiff's impairments which are supported by the medical record. *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004); *Burns v. Barnhart*, 312 F.3d 113, 120 (3d Cir. 2002); *Chrupcala v. Heckler*, 829 F.2d

1269, 1276 (3d Cir. 1987).  Hypothetical questions need only include factors that are supported

by objective medical evidence contained in the record.  *Chrupcala,* 829 F.2d at 1276.  It is not

necessary for the ALJ to include facts in a hypothetical that are supported only by a plaintiff's

subjective testimony.  *Id.*

     The ALJ posed the following hypothetical to the VE at the administrative hearing in this

matter:

> Q: Okay.  And let's assume his age of 23, high school education, and his lack of work
> experience.  Let's also assume that he has no significant physical limitations that would
> adversely affect his ability to work.  Let's further assume that he is limited to simple and
> repetitive tasks.  Let's assume further that he can do no work that does not require more
> than incidental interaction with the public.  Let's assume that he is incapable of engaging
> in work what requires team type activities with coworkers.  Let's assume that he also
> would require a job that would put him at the same, essentially the same, work site of
> location.  He wouldn't have to travel to different locations.  And the process of the work
> would be essentially the same without a lot of changes.  Are there jobs that such an
> individual would be capable of performing?
>
> A: Yes, Your Honor, there would be.  The first type of job this individual could perform
> would be that of janitor and cleaner at the medium exertional level, of which there are
> over two million nationally.  A second example of a job that this individual could
> perform would be laundry worker.  Those jobs would number about 75,000 nationally.
> And, a –
>
> Q: What level of exertion is that?
>
> A: I'm sorry, that would be light, Your Honor.
>
> Q: Okay, go ahead.
>
> A: And a third example of a job this individual could perform would be that of assembler,
> also at the light exertional level.  There would be over 738,000 of those such jobs.
>
> Q: All right.  Now let's assume further that we have an individual that has some
> difficulties interacting appropriately with supervision, so he would need to have a job
> where, as I indicated previously, that would be at a regular work site with regular and
> routine processes, and would not have to have a lot of interaction with supervisors.  Is

there any of these jobs that would be eliminated by that requirement to have limited interaction with a supervisor?

A: No, Your Honor.

(R. at 55-56).

Thereafter, the Plaintiff's attorney posed the following question:

Q: Okay, thank you.  Taking into consideration or keeping in mind, I guess I should say, the last hypothetical that Judge Pileggi asked you if you added to that that his ability to deal with work stressors was poor or non-existent and that his reliability was poor would that change your opinion as to job availability?

A: Yes.  That individual would not be capable of substantial gainful activity.

(R. at 57).

Plaintiff argues that the ALJ erred in relying on the testimony of the V.E. without considering the "limitations described by Dr. Mark Goral. . . ."  Pl's Br. at 21.

A hypothetical question need only include the factors that are supported by the objective medical evidence contained in the record.  *Plummer v. Apfel*, 186 F.3d 422, 421 (3d Cir. 1999). The Court has already found and ruled that substantial evidence supports the ALJ's decision to place minimal weight on the findings of Dr. Goral because such findings are inconsistent with the other medical evidence of record.  The record reflects that the hypothetical question posed by the ALJ accurately represented the Plaintiff's age, background, and residual functional capacity based on the objective medical evidence.  Accordingly, the ALJ did not err in failing to include the limitations set forth by Dr. Goral in the hypothetical posed to the VE.

Furthermore, as explained by the ALJ in his Decision, he found that the additional limitations included in the hypothetical posed by Plaintiff's attorney were not consistent with the medical evidence of record.

16

Plaintiff next contends that the ALJ failed to comply with the order of the Appeals Council which ordered that the ALJ

> [o]btain evidence from a vocational expert to clarify the effect of the assessed limitations on the plaintiff (Social Security Ruling 85-15 and 96-9p).  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The ALJ will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of jobs in the national economy (20 C.F.R. 416.966).

(R. 87).

Social Security Regulation 85-15 provides as follows:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

In determining whether a plaintiff can be expected to make a vocational adjustment, the ALJ must consider whether there are jobs the plaintiff can functionally perform given the his other limitations.  Plaintiff contends that the "ALJ allowed the V.E. to testify to wide categories of jobs without taking into consideration how the number of jobs would be eroded due to the specific limitations of the Plaintiff."  Pl's Br. at 23.

The Court finds and rules that the ALJ's decision is consistent with SSR 85-15, especially in light of the fact that the ALJ obtained evidence from a VE to clarify the assessed limitations on the Plaintiff's occupational base.

5.      *The Jobs Recommended by the Vocational Expert Satisfied the Residual Functional Capacity Assessment Determined by the ALJ*

Finally, Plaintiff contends that the jobs recommended by the VE do not satisfy the ALJ's residual functional capacity assessment.  Specifically, Plaintiff argues that the VE's recommendations are flawed because (i) the description of janitor/cleaner found in the Dictionary of Occupational Titles ("DOT") provides that "the worker, among other things, 'renders personal assistance to patrons';" and (ii) the DOT description of an assembler job provides that the worker "frequently works at a bench as a member of an assembly group, assembling one or two specific parts and passing unit to another worker" and "may be assigned to different work stations as production needs require or shift from one station to another to reduce the fatigue factor."  Pl's Br. at 23-24.

The regulations at 20 C.F.R. §§ 404.1566(d) and 416.966(d) provide that the Social Security Administration will take administrative notice of "reliable job information" available from various publications, including the Dictionary of Occupational Titles ("DOT").  SSR 00-4p.

First, Plaintiff argues that the VE's recommendation for "janitor/cleaner" was not responsive to the hypothetical because the hypothetical called for "limited" contact with the public, yet the DOT description of "janitor/cleaner" includes a reference to "renders personal assistance," something Plaintiff argues he is not capable of performing.

Next, Plaintiff argues that the VE's recommendation for "assembler" was also not responsive to the hypothetical because the DOT description of "assembler" includes "[f]requently works at a bench as a member of assembly group assembling one or two specific parts and passing unit to another worker."  Plaintiff contends that this requirement is inconsistent

18

with the hypothetical limitation that the Plaintiff was "incapable of team action" and limited to "repetitive, simple tasks."  Pl's Br. at 24.

After a review of the hypothetical posed to the VE, the Court finds and rules that the responses of the VE were responsive to the hypothetical questions.  The actual hypothetical included the following limitations:  simple, repetitive tasks; involving no more than incidental interaction with the public; no team activity; at a regular work site and without frequent changes in processes; involving infrequent interaction with supervisors.

As the ALJ pointed out, the DOT does not define either "incidental" or "infrequent;" however, "no vocational expert or layperson could reasonably interpret the hypothetical to mean, . . ., that Mr. Christy could only perform work in complete and total isolation."  ALJ Decision, at 23.

Accordingly, the Court finds and rules that the responses from the VE to the hypothetical were responsive and that the ALJ properly relied upon same in making his determination that Plaintiff was not disabled.

**IV.**	**Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment.  Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and his conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that he is able to perform a wide range of work at all exertional levels.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.


McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TIMOTHY J. CHRISTY,                  )
                                     )
            Plaintiff,               )
     v.                              )          02:03cv1866
                                     )
JO ANNE B. BARNHART,                 )
Commissioner of Social Security,     )
                                     )
            Defendant.               )


## ORDER OF COURT

     **AND NOW**, this 11th day of August, 2005, it is hereby **ORDERED**, **ADJUDGED**,

**AND DECREED** that:

    1.    The Motion for Summary Judgment filed by Plaintiff, Timothy J. Christy,

          (Document No. 7) is **DENIED**;

    2.    The Motion for Summary Judgment filed by Jo Anne B. Barnhart,

          Commissioner or Social Security, (Document No. 9) is **GRANTED**; and

    3.    The clerk will docket this case as closed.


                    BY THE COURT:


                    s/  Terrence F. McVerry
                    United States District Court Judge

cc:       Robert G. Yeatts, Esquire
Lewis & Ristvey
689 North Hermitage Road
P.O. Box 1024
Hermitage, PA 16148

Rebecca Ross Haywood
Assistant U.S. Attorney
Email: rebecca.haywood@usdoj.gov